UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Manhattan Telecommunications Corp.,
d/b/a Metropolitan Telecommunications,
a/k/a MetTel
44 Wall Street, 6th Floor,
New York, NY  10005

       Plaintiff

   v.

Global Naps, Inc,

       Defendant.
------------------------------------------------------------X

Index No.:  08 Civ 3829
          (JSR)

MEMORANDUM OF LAW
IN SUPPORT OF
SUMMARY JUDGMENT

David Aronow, Esq. (DA 2026)
President and Counsel
MetTel
44 Wall Street, 6th Floor
New York, New York 10005
(212) 607-2003

To
Joel Davidow, Esq.  (JD-4500)
Kile Goekijan Ree & McManus, PLLC
Attorney for defendant
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806

# TABLE OF AUTHORITIES

Statutes

| | | |
|---|---|---|
| Communications Act (1934) | 47 U.S.C. 151 et seq. | Page 3 |
| Telecommunications Act (1996) | 47 U.S.C. 251 et seq. | Page 3 |

Federal Cases

| | |
|---|---|
| AT&T, v. Central Office Tel., 524 U.S. 214 (1998) | Page 7 |
| Keogh v. Chicago & Northwestern Rwy. Co., 260 U.S. 156 | Page 7 |
| Aetna Cas. & Sur. v. Aniero Concrete, 404 F.3d 566, (2nd Cir. 2005) | Page 5 |
| AT&T v. City of New York, 83 F.3d 549 (2nd Cir 1996) | Page 7 |
| FTC v. Verity Intern., Ltd., 443 F.3d 48, 62 (2nd Cir. 2006) | Page 7 |
| Global Naps, Inc. v. Verizon, 454 F.3d 91 (2nd Cir 2006) | Page 8 |
| Advamtel, LLC v. AT&T, 118 F.Supp. 2d 680 (E.D. VA. 2000) | Page 7 |
| AmericanTelephone Corp., Inc. v. AT&T, (SDNY 07 Civ. 861 WHP) | Page 7 |
| Verizon v. Global Naps, Inc., 463 F.Supp.2d 330, 334 (E.D.N.Y. 2007) | Page 4, 6 |

State Cases

| | |
|---|---|
| Porr v. NYNEX Corp., 230 A.D.2d 564, (2nd Dep't 1997) | Page 7 |

Plaintiff, MetTel hereby submits this memorandum of law in support of its motion for summary judgment. For the reasons set forth herein, it is respectfully submitted that there is no genuine dispute about any material fact in the matter.

## Background

The dispute is a collection action. The plaintiff, MetTel, is licensed to sell telecommunications services to the public in every jurisdiction at issue herein. MetTel sells traditional local and long distance service as well as internet and data services to the public. The defendant, Global Naps, is a telecommunications provider. Global Naps says that it does not provide service to end users. Rather, it accepts traffic from other carriers for a fee and delivers telephone traffic to local carriers that terminate the calls to their end users. As such, Global Naps characterizes itself as an "intermediate carrier." One local carrier that Global Naps delivers calls to is MetTel who in turn terminates these calls to its end users. This allows a person making a phone call from a telecommunications provider using Global Naps to actually talk to the person they want to reach.

The Communications Act (1934) and the Telecommunications Act (1996) (both "ACT") are contained in title 47 of the United States Code. Pursuant to the Act, the Federal Communication Commission ("FCC") has promulgated regulations which govern inter-carrier compensation. As outlined in the complaint, the regime established by the FCC allows carriers who originate (start) or terminate (finish) the local portion of a call to collect fees for access to their network. These fees are called originating or terminating "access fees." They are owed when an interstate call crosses from one Local Access and Transport Area ("LATA") to another LATA. The Act leaves jurisdiction to the states to regulate calls that cross LATA boundaries but do not cross state lines and for intrastate

calls that remain within one LATA[1]. See Verizon v. Global Naps, Inc., 463 F.Supp.2d 330, 334 (E.D.N.Y. 2007).

Access fees may be assessed pursuant to a written agreement or by tariff in the absence of a written agreement. Id at note 1. The parties have no written agreement. Pursuant to Federal and State law, based on its tariffs, MetTel has billed Global Naps for traffic that Global Naps passes to MetTel for termination to MetTel's end users. Global Naps has refused to pay claiming that its calls are Voice over Internet Protocol ("VoIP"), which Global Naps claims is a new and uncategorized form of telecommunications. Because of this claim, Global Naps asserts that the dispute should be referred to the FCC. See Verizon v. Global Naps, Inc., 463 F.Supp.2d 330, at 340-2 (denying Global Naps' primary jurisdiction argument noting that the "FCC took a pass and sent them packing" on this very same claim).

Although there may be facts in dispute, based on the controlling law it is clear that none are material. The relevant facts are that Global Naps delivered traffic to MetTel for termination, MetTel in accordance with its tariffs billed Global Naps, and to date Global Naps has refused to pay.[2] Indeed, the discovery that Global provided demonstrates that the traffic is voice traffic destined for termination on the public switched telephone network and delivered to MetTel for termination to the latter's customers.

---

[1] It is rare but possible that a call can be interstate and local. For example the incumbent local Exchange carrier for Greenwhich, Connecticut is Verizon and that town is served by a switch located in New York State. Greenwhich is part of the Metro New York LATA. Therefore, a call from Greenwhich to New York City is technically local.

[2] Indeed, in open court, at the initial discovery conference, Mr. Davidow admitted that his client had not paid any of the bills that MetTel had sent to Global Naps.

4

Statement of Facts

MetTel is a licensed telecommunications carrier in the relevant jurisdictions. MetTel has filed tariffs for the charges it collects for the services rendered to Global Naps, among other carriers. (Aronow Aff. Par. 1 and 2).

Global Naps passed traffic to MetTel for termination of voice calls. MetTel sent bills for services rendered in the amount of $269,835.29. (Aronow Aff. Par. 3). Global Naps received the bills and refused to pay based on in its theory that the traffic was "information access traffic". Answer par 17, Aronow Aff. Par. 4. The traffic Global passes to MetTel is in traditional telephone protocol. Aronow Aff. Par 5.

Legal Argument

Summary judgment is appropriate in the present case.

> "Under th[e] Rule, the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir. 1991) (citing Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot `escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,'. . . or defeat the motion through `mere speculation or conjecture.'" Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." Aetna Cas. & Sur. v. Aniero Concrete, 404 F.3d 566, 574 (2nd Cir. 2005).

In this matter, plaintiff respectfully submits that the decision in <u>Verizon v. Global Naps, Inc.</u>, 463 F.Supp.2d 330 (E.D.N.Y. 2007) controls this case. There, Global Naps argued that the FCC had primary jurisdiction of the dispute. Judge Vitaliano in a very lengthy, detailed and thorough opinion concluded:

> In the instant matter, the crux of the dispute is what, if anything, Global ordered and at what, if any, charge. It is a dispute arising out of business relationships forged, if not forced, by federal law and regulations and, therefore, touching upon matters unresolved by the FCC in the teeth of technology's advances. Though it is also likely that the parties will disagree about how the FCC should regulate VoIP telecommunications traffic and resolve other open matters, that aspect of their dispute need not be resolved here nor should it afford a ground to defer any portion of the pending filed rate claims to await FCC resolution of these issues. <u>Id</u>. at 342.

Judge Vitaliano denied Global Naps' motion to dismiss based on primary jurisdiction of the FCC and held that it would proceed to decide the matter based on the filed rate doctrine mindful of the VoIP issue. The court recognized that VoIP was a new class of telecommunications. Further the court understood that the parties disagreed about how that type of traffic should be regulated. But notwithstanding all of the arguments presented by Global Naps, the court concluded that it was required to resolve the dispute because the FCC made it clear that it was not going to resolve it. Likewise, this Court should reject defendant's primary jurisdiction argument.

There being no reason to refer this matter to another jurisdiction, this Court can then determine that there are no triable issues of fact to preclude it from entering summary judgment. As stated, there is no dispute that Global Naps delivered traffic to MetTel and MetTel terminated that traffic. After receiving bills from MetTel, Global

Naps only disputed whether MetTel could charge Global Naps. Under federal and state law, MetTel's filed tariffs govern the relationship. "Under the filed rate doctrine, customers of a carrier are charged with notice of [the tariff], and they as well as the carrier must abide by it, unless it is found by the FCC to be unreasonable" All AmericanTelephone Corp., Inc. v. AT&T, (SDNY 07 Civ. 861 WHP), at page 4, quoting AT&T, v. Central Office Tel., 524 U.S. 214, 222 (1998). See also, Porr v. NYNEX Corp. , 230 A.D.2d 564, (2nd Dep't 1997) citing Keogh v. Chicago & Northwestern Rwy. Co., 260 U.S. 156. It should be noted that no agreement or formal order is necessary to be bound by the tariff. A party may constructively order the services. See AT&T v. City of New York, 83 F.3d 549, at 553 note 20 (2nd Cir 1996) (A party constructively orders service when it fails to take reasonable steps to prevent the service from being used). See also, Advamtel, LLC v. AT&T, 118 F.Supp. 2d 680, 683 (E.D. VA. 2000). In this matter, not only does Global Naps acknowledge that it took no steps to prevent the services from being used, but moreover, it claims it can use the services and never pay.

Significantly, in the recent case of All American, the defendant, AT&T, claimed that the traffic was VoIP just as Global Naps claims here. Notwithstanding that claim, Judge Pauley of the Southern District of New York, following controlling law, focused on the nature of the services provided pursuant to the filed tariffs. Judge Pauley quoting case law in this circuit and stated that the "filed rate doctrine applies only where the bills in dispute were for services covered by the FCC approved tariffs. . . . Accordingly, the courts must answer the fundamental question in the filed rate doctrine analysis: the nature of the service for which consumers were billed." quoting FTC v. Verity Intern., Ltd., 443 F.3d 48, 62 (2nd Cir. 2006). The Court had to determine whether services billed for under

the tariff were as indicated in the tariff or whether the services provided were for a different service. The court when on to conclude AT&T was required to pay access charges for termination of the VoIP calls because the service offered and provided was in fact as described in the tariff.

Here notwithstanding what form the traffic was prior to being handed off, at the hand off point, Global Naps, if it does anything, must convert the VoIP traffic to Time Division Multiplexing ("TDM") traditional protocol. From the handoff point until the call is completed by MetTel the nature of the service provided is exactly as described in its access tariffs. They are completing a voice call to an end user. That is the end of the inquiry. All AmericanTelephone Cop., Inc. v. AT&T, (SDNY 07 Civ. 861 WHP).

Finally, the court should be mindful that similar issues involving Global Naps have reached the Second Circuit Court of Appeals. There, the Second Circuit addressed similar attempts by Global Naps to avoid existing inter-carrier compensation regulation regarding a perceived ambiguity in the regulations. See Global Naps, Inc. v. Verizon, 454 F.3d 91 (2nd Cir 2006). In that dispute, the Second Circuit summed up what Global Naps was trying to do when it stated as follows, at page 102-103:

> Global wants to use virtual NXX to disguise the nature of its calls — that is, to offer its customers local telephone numbers that cross Verizon's exchanges instead of the traditional long-distance numbers attached to such calls. Virtual NXX is not the only way to accomplish this end although in light of economic realities, it may be the only practical way. But where a company does not own the infrastructure and is not willing to pay for using another company's infrastructure, we see no reason for judicial intervention. Congress opened up the local telephone markets to promote competition, not to provide opportunities for entrepreneurs unwilling to pay the cost of doing business.
> \* \* \*
> Finally, Global's desired use of virtual NXX simply disguises traffic subject to access charges as something else and would force Verizon to subsidize

Global's services. This would likely place a burden on Verizon's customers, a result that would violate the FCC's longstanding policy of preventing regulatory arbitrage. Telecommunications regulations are complex and often appear contradictory. But the FCC has been consistent and explicit that it will not permit CLECs to game the system and take advantage of the ILECs in a purported quest to compete.

A review of this case demonstrates that Global Naps has simply continued to do what it has been doing for years and what the Second Circuit said it cannot do, to wit, trying to disguise interstate telecommunications traffic as something else and avoid paying the cost of doing business. Indeed, when counsel for both sides was before the Court, counsel for Global Naps brazenly acknowledged that it had not paid one penny for the services provided. I respectfully submit that controlling precedent requires Global Naps to pay the cost of doing business.

Respectfully submitted,

David Aronow, Esq. (DA 2026)
President and Counsel
MetTel
44 Wall Street, 6th Floor
New York, New York 10005
(212) 607-2003

To
Joel Davidow, Esq. (JD-4500)
Kile Goekijan Ree & McManus, PLLC
Attorney for defendant
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806