UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| Manhattan Telecommunications Corp., <br> d/b/a Metropolitan Telecommunications, <br> a/k/a MetTel <br> 44 Wall Street, 6th Floor, <br> New York, NY 10005 <br><br>         Plaintiff <br><br> v. <br><br> Global Naps, Inc, <br><br>         Defendant. | Index No.: 08 Civ 3829 <br>         (JSR) <br><br><br> OPPOSITION TO <br> SUMMARY JUDGMENT |

-------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

# Table of Authorities

## Cases

Aetna Cas. & Sur. v. Aniero Concrete, 404 F.3d 566
(2nd Cir. 2005) — Page 5

Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) — Page 7

Alliance Communications Co-op vs. Global Crossing Telecom,
06 Civ 4221 (KES) (SD 2007) — Page 11

Global Naps, Inc. v. Verizon, 454 F.3d 91, (2nd Cir 2006) — Page 4, 5 and 12

Verizon v. Global Naps, Inc., 463 F.Supp.2d 330
(E.D.N.Y. 2007). — Page 8 and 10

## Administrative decisions

### FCC

*In the Matter of Petition for Declaratory Ruling that AT&T's phone-to-phone IP Telephony Services are Exempt from Access Charges*,
FCC WC Docket No. 02-361 — Page 5, 9 and 10

### New York State Public Service Commission

*Complaint of TVC Albany, Inc., d/b/a Tech Valley Communications against Global Naps, Inc. for failure to Pay intrastate Access Charges*,
Order dated March 20, 2008 — Page 6, 7 and 8

### California Public Utility Commission

PACBell v. Global Naps California, Inc., case no. 07-11-018,
order dated 6-4-08 — Page 7

## Statutes

47 U.S.C 252 — Page 8

Preliminary Statement

MetTel is suing Global Naps to recover under its tariffs of charges for completing long distance telephone calls dialed to MetTel customers. Global Naps admits that MetTel completed the calls for Global Naps. However, Global Naps has refused to pay for the services. It claims that the calls were initiated in (Voice over) Internet Protocol ("VoIP"). Global Naps argues that the Federal Communications Commission, ("FCC") has not determined whether telecommunications carriers may collect completion ("Access") charges pursuant to their tariffs for calls initiated in VoIP. However, Global Naps provides no evidence that the calls were initiated in Internet Protocol.

Even if Global Naps had provided such evidence, Global Naps has not pointed to a Federal Communications Commission ("FCC") or Federal Court decision that precludes this Court from applying the existing law, namely the filed rate doctrine.

Under the filed rate doctrine, the Court is required to determine whether or not the nature of the services MetTel provided to Global Naps was as described in its tariffs. Here, Global Naps admits that all of the voice telephone traffic delivered to MetTel for call completion was in traditional telephony format, namely time division multiplexing. Global Naps fails to dispute that the nature of the services provided were as described in the tariff.

Finally, the Second Circuit Court of Appeals has ruled that Global Naps cannot raise as a defense to payment for call completion the fact that it used VoIP somewhere in the transmission of the call. Global Naps, Inc. v. Verizon, 454 F.3d 91, 101-102 (2nd Cir

2006) ("[t]o allow a carrier to avoid regulatory obligations simply by dropping a little IP in the network would merely sanction regulatory arbitrage"). Furthermore, Global Naps' claim that it is an intermediate carrier is another red herring issue that dissolves upon review. Accordingly, based upon all of the above, Global Naps fails to establish entitlement to judgment as a matter of law.

Facts

Global Naps and MetTel are licensed telecommunications carriers in various jurisdictions relevant here. However, Global Naps' facilities were shut down in at least three states due to billing disputes, namely Connecticut, Georgia and California. Scheltema deposition page 42-46.

Global Naps claims it is an intermediate carrier and it does not originate any of the traffic. Def. memo at page 4. Global Naps fails to submit an affidavit from someone with first hand personal knowledge regarding how the telecommunications traffic it carries was initiated or originated. Global Naps submitted the affidavit of Bradford Masuret. Therein, he admits he has no first hand personal knowledge regarding the origination of the traffic that Global Naps carries. See Declaration of Bradford Masuret, dated August 6, 2008 attached to the Global Naps Motion for summary judgment.

Global Naps admits that it passes traffic to MetTel and that MetTel completes or terminates calls to it customers for Global Naps. See def. memo at page 4, 2nd paragraph, and near the top of page 7, answer at par 17. Global Naps Statement Rule 56.1 at par. 10.

Global Naps was aware of MetTel's invoices, failed to pay them and continued to send traffic to MetTel. It took no steps to prevent transmission to MetTel. See Aronow Aff. dated August 27, 2008, at par. 12.

As Global Naps frames the issue, the "only dispute has to do with whether Plaintiff's tariff can legally apply to Defendant and its VoIP traffic." See Def. memo at page 7. Thus Global Naps takes the position that there is no dispute as to a material fact in this case.

Legal Standard

> "Under th[e] Rule, the moving party is entitled to summary judgment if the papers show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. The responding party "must set forth specific facts showing that there is a genuine issue for trial. The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, . . . or defeat the motion through mere speculation or conjecture. While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment .Aetna Cas. & Sur. v. Aniero Concrete, 404 F.3d 566, 574 (2nd Cir. 2005) (citations omitted).

Global Naps omits any evidence in admissible form that demonstrates that the traffic it passes originates in VoIP. This is material because both the Second Circuit Court of Appeals and the FCC have ruled that using Internet Protocol or VoIP traffic in the middle of a telecommunications network cannot be used as a basis to avoid charges. Global Naps, Inc. v. Verizon, 454 F.3d 91, 101 (2nd Cir 2006); Order of April 21, 2004,

5

*In the Matter of Petition for Declaratory Ruling that AT&T's phone-to-phone IP Telephony Services are Exempt from Access Charges*, FCC WC Docket No. 02-361. Rather than confront that issue, Global openly acknowledges that it does not originate the traffic. Therefore, its theories about how the traffic it carries is originated are not only gratuitous but render its motion defective as a matter of law. On this basis alone, its motion for summary judgment must be denied. For example, when asked about this matter at deposition, Mr. Scheltema of Global Naps testified as follows:

START CONFIDENTIAL



END CONFIDENTIAL

To overcome its fatal omission with respect to the facts, Global Naps relies on a decision of the New York State Public Service Commission. See def. memo at page 8, citing *Complaint of TVC Albany, Inc., d/b/a Tech Valley Communications against Global*

*Naps, Inc. for failure to Pay intrastate Access Charges*, Order dated March 20, 2008, (hereinafter "TVC"). Global Naps claims that the New York Public Service Commission relied on certain correspondence of its carrier customers presumably for the proposition that its telecommunications traffic originated in Internet Protocol. See def. memo at page 8-9. However, pointing to this decision fails to remedy the factual omission. Collateral estoppel or issue preclusion, applies when:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits. Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks and citations omitted).

Global Naps has not even argued that any of these elements apply such that the the TVC decision precludes MetTel from raising the factual issue. Clearly, in TVC the issues were not identical in that MetTel is suing for both interstate and intrastate access as opposed to just intrastate access. It appears that the parties did not actually litigate the fact issue in any way, and it is unclear that there was an opportunity for a full and fair litigation of the issue at the New York PSC in that proceeding. Accordingly, the doctrine of issue preclusion does not support Global Naps' bald assertion that the traffic it carries originates in Internet Protocol or VoIP.

Notably, in California, where the fact issue was actually litigated, the California Public Utilities Commission ("CPUC") ruled that the traffic that Global Naps carried originated in traditional telephony format and not in Internet Protocol as it alleged. As a result of that finding, the CPUC ordered Global Naps to pay intrastate access charges.

See <u>PACBell v. Global Naps California, Inc.</u>, case no. 07-11-018, order dated 6-4-08, at page 11-12.

Even if Global Naps had produced evidence to establish that the traffic originated in IP --- which it did not-- it still has not pointed to a binding decision in this Circuit or from the FCC that would require this Court to not apply the controlling law. Importantly, Global Naps does not dispute that the filed rate doctrine generally applies. It admits that at page 7-8. Its defense is that "the traffic it forwards is 'enhanced' and is 'VoIP', which is presently immune from switched access tariff charges, due to the federal regulatory situation, recognized by state commission in New York and elsewhere as having preemptive effect". See def. memo at page 7-8.

The problem with Global Naps' argument is that despite the decisions of the various state commissions, their decisions are not determinative of federal law and they do not purport to be in any event. For example, in TVC, the New York State PSC only held that because the FCC determined VoIP traffic to be interstate in nature, TVC could not collect under its New York intrastate access tariffs. The New York PSC expressly directed that if the parties could not agree on compensation for call completion, TVC would have to shut off Global Naps because TVC was entitled to compensation. Importantly, the New York PSC made no ruling that federal interstate access tariffs did not apply and even if it did, it would have no jurisdiction to do so. Therefore, it is clear that despite Global Naps' arguments to the contrary, federal law and not state administrative opinions determine this case.[1]

---

[1] The Wisconsin Commission decision that Global Naps cites also does not support its position. That decision involved the arbitration of negotiations for a contract to interconnect under 47 U.S.C. 252. While the Wisconsin commission chose to not follow the existing access charge regime, it did impose a cost to complete the call. Since the Wisconsin Commission has authority to act as an arbitrator pursuant to federal

Importantly, Global Naps raised very similar issues against Verizon in another collection action in the Eastern District of New York. <u>Verizon v. Global Naps, Inc.</u>, 463 F.Supp.2d 330 (E.D.N.Y. 2007). Global Naps argued that the Court should defer action until the FCC decided the VoIP Issue and that the tariff rates should not apply. Judge Vitaliano disagreed and stated as follows:

> Because it cannot be said, viewing Verizon's complaint in the light most favorable to Verizon as the nonmoving party, including, for example, Verizon's interpretation of the ASRs as Global's orders to purchase certain transport services and facilities at the tariffed rate, that the complaint is legally unfeasible or factually unprovable, Verizon survives the Rule 12 challenge. <u>Id</u>. at 344.

In short, Judge Vitaliano dismissed Global Naps' arguments to defer action to the FCC and allowed Verizon claims under the filed rate doctrine to proceed. The important issue determined by that Federal Court Judge is that notwithstanding the VoIP issue, the filed rate doctrine applies. Likewise in <u>All American Telephone Corp., Inc. v. AT&T</u>, (SDNY 07 Civ. 861 WHP), Judge Pauley ordered AT&T to pay interstate access tariff rates for call completion or access charges under the filed rate doctrine relating to internet based chat or bridge communications. Therefore, contrary to Global Naps' position, the precedent in this Circuit does not support its view of the law. Rather, the filed rate doctrine applies to VoIP traffic.

Under the filed rate doctrine, the court must determine whether the nature of the services described in the tariff are the same as the services provided. Global Naps has not presented and, in fact, concedes that the there is no difference between the tariff description and the services provided. Global Naps admits that the traffic is

---

law, its decision to impose in the first instance a different access charge regime for traffic initiated in VoIP may be upheld. However, this decision has no impact on this case due to the different factual context here.

handed off to MetTel (or Verizon for MetTel) in time division multiplexing format. Therefore, Global Naps sets forth no basis to avoid application of the filed rate doctrine.

Global Naps asserts that it is an Intermediate CLEC and under FCC rules, it claims, MetTel cannot collect against it. Global Naps cites an order of the FCC for support that as an intermediate CLEC it has no obligation to pay for access services. See Global Naps brief at page 7. However, a review of the footnote referred to in the cited FCC decision demonstrates that Global Naps is not the type of carrier that the FCC was referring to. The FCC stated as follows:

> We note that, pursuant to section 69.5(b) of our rules, access charges are to be assessed on interexchange carriers. 47 C.F.R. § 69.5(b). To the extent terminating LECs seek application of access charges, these charges should be assessed against interexchange carriers and not against any intermediate LECs that may hand off the traffic to the terminating LECs, unless the terms of any relevant contracts or tariffs provide otherwise

See Order of April 21, 2004, *In the Matter of Petition for Declaratory Ruling that AT&T's phone-to-phone IP Telephony Services are Exempt from Access Charges*, FCC WC Docket No. 02-361, note 92 at 15.,

Despite Global Naps' claim that it is an intermediate CLEC, that claim is belied by the facts. Global Naps admits it has no local customers and it does not terminate or originate local calls. In light of that, it is hard for it to argue that it is any kind of local exchange carrier, except in name only.[2] Second, Global Naps must hand off calls to the

---

[2] Indeed, in Verizon's action in the Eastern District against Global Naps, Verizon is seeking, among other things, interstate access charges from Global Naps simply because the traffic Global is handing off through its interconnection trunks are interstate traffic and that fact is not in dispute. Global is judicially estopped from contending other wise.

ILEC (Incumbent Local Exchange Carrier) to have the calls completed. As Judge Vitaliano noted in <u>Verizon v. Global Naps, Inc.</u>, 463 F.Supp2d 330 (EDNY 2007)

> The essential elements of a local exchange carrier's network are "the local loops (wires connecting telephones to switches), the switches (equipment directing calls to their destinations), and the transport trunks (wires carrying calls between switches)." <u>AT & T Corp. v. Iowa Utilities Bd.</u>, 525 U.S. 366, 371 (1999). . . . [a]n interexchange carrier cannot complete a call without a local exchange carrier to make the local connection".

Since Global Naps admits it has no wires connecting telephones to switches and cannot complete the local portion of any long distance call, ipso facto Global is not an intermediate CLEC. Rather than a carrier like Global Naps, what the FCC was talking about in the AT&T case was, for example, Verizon's role when it hands off calls to MetTel from interexchange carriers such as Global Naps. In that circumstance, Global Naps, which is receiving calls from other carriers and aggregating them, hands off to Verizon in various LATAs or local exchanges. At that point, Verizon routes calls to its customers. However, Verizon also routes call destined for customers of other CLECs, including MetTel. In this circumstance, MetTel could not properly bill Verizon, because all Verizon does is transport the call within the LATA or local exchange to MetTel for termination or completion to the ultimate end user customer.

Furthermore, since the interexchange carrier is always billing the originating customer for the call, it is, therefore, only logical that the interexchange carrier should pay for terminating access: *but for* the terminating LEC completing its function, the interexchange carrier could not complete the call or bill its customer.

Notably, even if, Global Naps was considered an intermediate carrier, courts have found liability under the constructive ordering doctrine. See <u>Alliance Communications Co-op vs. Global Crossing Telecom</u>, 06 Civ 4221 (KES) (SD 2007), at page 14 (stating that "intermediate" carriers can be billed for access). Global Naps was aware for years that MetTel was completing calls for Global Naps and that it expected payment. Global Naps took no steps to avoid sending the traffic.

Finally, Global Naps has a long history of litigation with numerous carriers. It admits that it has been shut-off for failing to pay the cost to access the Public Switched Telephone Network ("PSTN"). See page 42-46 Scheltema deposition. In its decision involving Global Naps, the Second Circuit Court of Appeals concluded that Global Naps was trying to avoid paying access charges for the local portion of a long distance call by disguising the call as local using a virtual NXX to do so which is using an area code number in an exchange different than what that area code serves. See <u>Global Naps, Inc. v. Verizon</u>, 454 F.3d 91, 102-103 (2nd Cir 2006), where the Court stated:

> Global wants to use virtual NXX to disguise the nature of its calls — that is, to offer its customers local telephone numbers that cross Verizon's exchanges instead of the traditional long-distance numbers attached to such calls. Virtual NXX is not the only way to accomplish this end although in light of economic realities, it may be the only practical way. But where a company does not own the infrastructure and is not willing to pay for using another company's infrastructure, we see no reason for judicial intervention. Congress opened up the local telephone markets to promote competition, not to provide opportunities for entrepreneurs unwilling to pay the cost of doing business.
> \* \* \*
> Finally, Global's desired use of virtual NXX simply disguises traffic subject to access charges as something else and would force Verizon to subsidize Global's services. This would likely place a burden on Verizon's customers, a result that would violate the FCC's longstanding policy of preventing

regulatory arbitrage. Telecommunications regulations are complex and often appear contradictory. But the FCC has been consistent and explicit that it will not permit CLECs to game the system and take advantage of the ILECs in a purported quest to compete.

The same could be said here. Global Naps is doing the exact same thing in a different way. There is no evidence to establish that the traffic Global Naps passes really is VoIP. However, there is a decision of the CPUC concluding the opposite, namely, that the traffic Global Naps passes is actually traditional telephony originating on the Public Switched Telephone Network. The VoIP issue is simply another red herring that Global Naps uses to gain access to the Public Switched Telephone Network without paying for that access. Global Naps' motion which seeks to continue that access for free should be denied.

Dated: New York, New York
August 27, 2008

Respectfully submitted,

David Aronow, Esq. (DA 2026)
President and Counsel
MetTel
44 Wall Street, 6th Floor
New York, New York 10005
(212) 607-2003

To
Joel Davidow, Esq. (JD-4500)
Kile Goekijan Ree & McManus, PLLC
Attorney for defendant
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806