UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| Manhattan Telecommunications Corp., <br> d/b/a Metropolitan Telecommunications, <br> a/k/a MetTel <br> 44 Wall Street, 6th Floor, <br> New York, NY 10005 <br><br> Plaintiff <br><br> v. <br><br> Global Naps, Inc, <br><br> Defendant. | Index No.: 08 Civ 3829 <br> (JSR) <br><br><br><br> AFFIDAVIT |

-----------------------------------------------------------X

STATE OF NEW YORK
                 ss:
COUNTY OF NEW YORK

       DAVID E. ARONOW, being duly sworn, deposes and says:

       1.      I am president and counsel to MetTel. I submit this affidavit in opposition to the motion by the defendant for summary judgment.

       2.      MetTel is a certificated Local Exchange Carrier operating in 48 states and the District of Columbia. MetTel provides, among other things, local exchange service to end user customers.

       3.      In its statement pursuant to rule 56, Global Naps asserts "facts" which are not facts at all or are offered in inadmissible form. I review them here to point to the defects in their papers.

       4.      In paragraphs 3 and 9 defendant concludes that it is not an interexchange carrier because it does not have end users and does not bill on a per minute basis. This is

a legal conclusion which is denied. In fact, because Global Naps delivers traffic across exchange boundaries it is a long distance or interexchange carrier.

5. In paragraph 4, defendant concludes that it is an "intermediate carrier" This is a conclusion. It is rejected.

6. In paragraph 5, Defendant claims it has only four customers. While we do not dispute that at this point, the information is solely in defendant's possession.

7. In paragraph 6, defendant claims without supplying a basis that it or its customers "enhance" traffic. This is not factual, but conclusory and vague and is rejected.

8. In paragraph 7, defendant claims that it carrier customer's certify that they are enhanced service providers. This is rejected. This is a self-serving conclusion that cannot be introduced as a fact in this form.

9. In paragraph 8, defendant claims that it converts traffic from its customer into Asynchronous Transfer Mode ("ATM")and then reconverts it to traditional telephony when it hands off to Verizon or other ILECs. While I do not dispute that it hands off to ILECs in traditional telephony, there is no evidence in the record from someone with first hand personal knowledge to support the allegation that any traffic is converted into ATM. The witness used as support is an attorney who admits at page 24-26 of his deposition that he has no first hand personal knowledge of the switching capabilities of his firm. Attached hereto as Exhibit A. But he does admit that ATM is not Internet Protocol. Scheltema Dep at 35:15-18

10. Significantly, Global Naps admits that it converts traffic from its customers into ATM. Since Global is required to convert into ATM from something else,

Global Papers raise factual question whether the traffic is originated in traditional Telephony TDM format in the first instance.

11. In paragraph 10, while we do not dispute that Global Naps transmits traffic bound for New York to Verizon and therefore MetTel as well, I deny any other inference in the paragraph as Mr. Scheltema has no first hand personal knowledge of the facts.

12. In paragraph 11, while we admit that we have never entered into a written agreement, I assert that Global Naps was aware that it was sending traffic destined to MetTel and failed to take reasonable steps to avoid such transmission. On several occasions, I called Robert Fox of Global Naps several times as early as 2004. I know Mr. Fox personally since at least 1999. I asked him to pay MetTel's invoices. Notwithstanding, Global Naps never paid an invoice and decided to continue to send traffic to MetTel.

13. In paragraph 12 Global Naps alleges as fact that its traffic is VoIP based on a decision of the New York State Public Service Commission. This is rejected. It is not a fact. The decision is a matter of public record and without establishing a basis for issue preclusion Global Naps may not cite to the decision to establish that its traffic with MetTel was initiated in internet protocol.

14. In paragraph 13, Global Naps cites as fact that its customer testified as to certain qualities of the traffic it handles. That is rejected for the same reason as in paragraph 13 above.

15. In paragraph 14, Global Naps asserts that the New York Public Service Commission has required parties to enter into private contract negotiations. Again, this is a legal decision by an administrative body. We do not accept it as a fact in the case.

16. In paragraph 15, Global Naps claims it has objected to invoices it received from MetTel. It cites to Mr. Scheltema's declration. However, when asked at deposition about a dispute letter to MetTel, Mr. Scheltema answered at page 36 as follows:

> Q. Do you know if that letter was sent to MetTel?
> A. I do not know—I have to presume it was, because you produced it.
> Q. Do you have any reason to doubt that Global Naps or Robert Fox for Global Naps sent that letter?
> A. Yes, I do.
> Q. What's the reason?
> A. There's no signature . . . .

17. In paragraph 16, Global Naps again asserts that it is an enhanced service provider. That is a conclusion that MetTel denies in this case.

_____
DAVID E. ARONOW

Sworn before me this
27th day of August 2008

_____
Notary Public

Winnie Lee
Notary Public, State of New York
No. 01LE6152185
Qualified in Queens County
Commission Expires August 28, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

Manhattan Telecommunications Corp.,      Index No.: 08 Civ 3829
d/b/a Metropolitan Telecommunications,                (JSR)
a/k/a MetTel
44 Wall Street, 6th Floor,
New York, NY 10005,

       Plaintiff

   v.

Global Naps, Inc.

       Defendant.
---------------------------------------------------------------X

## **AFFIDAVIT**

David E. Aronow, Esq. (DA-2026)
President and Counsel
MetTel
44 Wall Street, 6th Floor
New York, New York 10005
(212) 607-2003

```
                         Scheltema
```

much DS3s, for example?

    A.    We don't bill on a minutes basis because that's inapplicable. So what we do is we sell blocks of capacity, for lack of a better term. So I can't tell you how much traffic is flowing. I really don't have intimate knowledge of what we are selling to customers in New York, I'm sorry. I don't know whether it's a DS30, a ten or -- I just don't know.

    Q.    Who would know?

    A.    I'm not sure anybody could really give you a good figure, because we have facilities that may be 30 percent utilized, some that might be 90 percent utilized. So, I'm not sure that even sales or anybody else could give you that kind of a number. Verizon itself might be able to provide that as measured from what they are passing to us. But I don't know what they do and how they measure their traffic.

    Q.    Is there an employee of Global NAPS or a consultant who is responsible for running the equipment at the point of presence at 32 Old Slip, an engineer, like a technical --

    A.    I understand. The equipment runs itself.

25

1  Scheltema
2  There's a switch technician that -- I'm not sure
3  whether he's an employee anymore or not, but in the
4  past, and that's Keith Harron, H-A-R-R-O-N.
5      Q.   Two Rs you said?
6      A.   Yes.  Had general duties associated with
7  the maintenance of the facilities in Old Slip.
8      Q.   Do you know if the Conversant switch
9  records call records?
10     A.   It does not.
11     Q.   How do you know -- how do you form your
12 knowledge -- how do you find out that that switch
13 doesn't record call records?
14     A.   We use an alternate system for recording
15 call records, but it's not an industry standard.
16     Q.   What system is that?
17     A.   It's called Techno.  T-E-C-H-N-O.  It
18 might be T-E-C-K-N-O.  And we use that to record
19 minutes of use data relative to our in-bound traffic
20 inward to invoice Verizon for reciprocal
21 compensation.
22     Q.   So, do you use that system to record
23 traffic going to Verizon?
24     A.   No.
25          Well, no, not to my knowledge.

```
1                          Scheltema
2      Q.    But you don't run the equipment
3　day-to-day?
4      A.    No, that's a third party provider,
5 Techno Systems.  So none of Global NAPS's people run
6 CDR, all data record producing equipment.
7      Q.    Who's responsible for making decision
8 whether to record call data information or not?
9      A.    I don't know the answer to that.
10     Q.    Would Mr. Gangi ultimately be responsible
11 for that decision, to your knowledge?
12     A.    I don't know who --
13     Q.    You just don't know?
14     A.    Yeah.
15     Q.    Does Global NAPS use signaling system 7
16 in interconnection with Verizon?
17     A.    Yes, it uses SS7X.
18     Q.    Do you know what equipment it uses for
19 SS7?
20     A.    No, I don't.  I should, but I don't
21 recall it off the top of my head.
22     Q.    Would Mr. Harron now?
23     A.    He might.
24     Q.    Do you know whether or not SS7 equipment
25 records certain call information?
```