UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Manhattan Telecommunications Corp., d/b/a Metropolitan Telecommunications, a/k/a MetTel** 44 Wall Street 6th Floor **New York, NY 10005** *Plaintiff,* v. **GLOBAL NAPS, INC.,** *Defendant* | 08 – CIV-3829 (Judge Rakoff) **DEFENDANT GLOBAL NAPS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST ALL COUNTS OF THE COMPLAINT** |

Joel Davidow (JD-4500)
KILE GOEKJIAN REED & MCMANUS, PLLC
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806

William J. Rooney, Jr. (WR-8317)
Jeffrey C. Melick (JM-1686)
89 Access Road, Suite B
Norwood, MA 02062
(781) 551-9956

*Counsel for Defendant*

# AUTHORITIES

## Cases

*Alliance v. Global Crossing,* 2007 WL 1964271 (D.S.D. July 2, 2007)......................4, 11

*Aniero Concrete Co., Inc. v. The Aetna Cas. and Surety Co, Inc.*, Nos. 94 CIV. 9111, 95 CIV. 2506, 1998 WL 148324, (Mar. 30, 1998)....................................................................3

*Chisholm-Ryder Co. v. Sommer & Sommer*, 70 A.D.2d 429, 421 N.Y.S.2d 455, 457 (4th Dep't 1979)...........................................................................................................................12

*Global NAPs, Inc. v. Verizon*, 454 F.3d 91 (2nd Cir. 2006).................................................10

*Iowa v. Quest*, 355 F.Supp.2d 850 (S.D. Iowa 2005).........................................................4

*Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 719 (S.D.N.Y.1986)....................................................................................................................12

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir.1999)..............................................................................................................................12

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 325 F.Supp.2d 204 (S.D.N.Y. 2004)........................................................................................................................................12

*Minnesota Public Utilities Commission v. FCC,* 483 F.3d 570 (8th Cir., 2007)...............11

*Steinberg v. Columbia Pictures Indus., Inc.,* 663 F.Supp. 706 (S.D.N.Y. 1987)................3

*Verizon v. Global NAPs, Inc.,* 07-CV-4459...........................................................................3

## Rules

47 C.F.R. § 69.5(b).................................................................................................................5

47 C.F.R. § 64.702(a).............................................................................................................6

47 U.S.C. § 153(20)................................................................................................................6

47 U.S.C. § 230.......................................................................................................................5

## Commission/Other Holdings

PSC Case No. 07-C-0059, *Complaint of TVC Albany, Inc. d/b/a Tech Valley Communications Against Global NAPs, Inc. for Failure to Pay Intrastate Access Charges,* Order dated Mar. 20, 2008........................................................................6, 7, 11

*In re Vonage Holdings Corp.,* 19 FCCR 22404, (2004)......................................................11

Order of Apr. 21, 2004, *In the Matter of Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges*, FCC WC Docket No. 02-361...............................................................................................................5

*Pac-Bell v. Global NAPs*.......................................................................................................8

*Petition of MCImetro Access Transmission Services,* PSC Ref. No. 54417, Arbitration Award of May 15, 2006.................................................................................................6, 8, 9

**INTRODUCTION**

Ostensibly, MetTel's complaint asserts five counts against Global NAPs, Inc ("Global"). After some discovery and two exchanges of briefs, it now appears clear that only Count I, application of interstate tariffs, requires further discussion. MetTel's briefs have defended Count I only, conceding by silence or even admission that the other four counts are untenable. Moreover, MetTel's admissions reveal that the basic facts necessary to its claims or its right to assert them are neither pleaded nor proved according to law.

**I. MetTel's Claims Should Be Dismissed Because It Has Not Proved That It Delivered Global's Traffic, Or That It Has A Clear Non-duplicative Right To Sue For Traffic Verizon Delivered.**

As to Count I, discovery reveals that it is even more flawed than Global originally realized. Not only is Global exempt from the tariffs as a matter of law, but MetTel has now admitted that it was Verizon[1], not itself, that performed the switching in question, and has failed to produce any evidence up to now showing that it has an assigned right from Verizon to charge for switching that Verizon does. For that matter, it did not plead such an assignment. Nor is it clear that Verizon, which has a pending case against Global for contractual access fees, is not seeking the charges for these same services, thus potentially duplicating the amount(s) claimed by MetTel. Lastly, it appears that Verizon may be an indespensible party, here. As a result, discovery in this case – specifically, the deposition of its trial counsel, David Aronow – has now buttressed our contention that this case was brought improvidently in the first place. As it turns out, and as noted in our

---

[1]    See Global's Brief in Opposition at 3 and Exhibit A thereto (Aronow deposition transcript).

previous brief,[2] MetTel's claimed right to collect access charges from Global is not based primarily, or even substantially, on services or facilities provided by MetTel. Rather, it hangs on services and facilities provided by Verizon: "So what happens is Verizon charges us [MetTel] a fee for handling traffic over that line, but we bill the access." Aronow Tr. at 12-13. If so, Global has not actually "…used Plaintiff's originating and terminating interstate access services," as alleged in ¶21 of the Amended Complaint. If so, MetTel's claim against Global is derivative of *Verizon's* rights, whatever they may be, to assess access charges against MetTel and/or Global. And, as referenced earlier, these charges are being disputed between Verizon and Global in a different forum.[3]

Under those circumstances, whatever rights of Verizon that MetTel may presume to assert derivatively would require litigation of Verizon's rights, under its tariffs or otherwise.[4] Moreover, absent evidence of an assignment from Verizon, MetTel's Amended Complaint would be subject to dismissal in any event. *See, Aniero Concrete Co., Inc. v. The Aetna Cas. and Surety Co, Inc.*, Nos. 94 CIV. 9111, 95 CIV. 2506, 1998 WL 148324, (Mar. 30, 1998)(absent prejudice to plaintiff, affirmative defense of invalid assignment may be raised initially in motion for summary judgment) citing *Steinberg v. Columbia Pictures Indus., Inc.,* 663 F.Supp. 706 (S.D.N.Y. 1987).

---

[2]    Global's Brief in Opposition at 3, and Exhibit A thereto (Aronow deposition transcript) at 12-13.

[3]    See Verizon v. Global NAPs, Inc., 07-CV-4459 (Attached as Exhibit 13).

[4]    Verizon, of course, is not a party to this case. But in light of *Verizon v. Global NAPs, Inc.,* 07-CV-4459, in which Verizon claims access charges against Global directly on account of VoIP traffic, Verizon may be an indispensable party to this case under Rule 19(a), and MetTel's Amended Complaint may be subject to dismissal under Rule 12(b)(7) on the basis of the new facts unearthed in Mr. Aronow's deposition testimony. Global intends to pursue this possibility, if necessary, following disposition of the pending cross-motions for summary judgment.

**II. Count I Should Be Dismissed Because Global Is An Intermediate Carrier And Because Global's Traffic Is Enhanced And VoIP, And Thus Not Subject To Tariffed Access Charges Aimed At Regular Long Distance Calls.**

Count I is untenable both because Global is an intermediate carrier with no end-user customers for which it provides dial tone services and because Global's traffic is not normal long-distance traffic, e.g., 1+ ###-###-####. Nor are our factual contentions seriously contested. Lastly, MetTel's case authority lacks relevance.

**A. Global is an intermediate carrier and thus not subject to access charges imposed on interexchange carriers.**

Global is an intermediate carrier for two reasons: First, it has no end-user customers. As will be shown, the FCC intends that access charges be ultimately imposed on callers, but imposing charges on a mere retransmitter like Global cannot accomplish this goal. Global's customers are not end-users, nor are their customers end-users. They are VoIP aggregators like Transcom, not VoIP subscribers.

Secondly, Global does not transmit calls from the local exchange of the caller to the local loop of the person called, and thus is not a long distance company or an interexchange carrier. It only forwards traffic from retransmitting and processing locations, the area code of which is irrelevant to defining the end points of an interexchange call. MetTel's main refutation of this point is to threaten to sue Global's customers, such as Transcom, but that is not a reason to sustain this action. MetTel also cites *Alliance v. Global Crossing*, 2007 WL 1964271 (D.S.D. 2007) as sustaining an action against an intermediate carrier, but in that action the defendant carriers were directly interconnected to the plaintiff and may have had end-user customers, while here, MetTel admits Global is not connected to it. Also, *Alliance* cites *Iowa v. Quest*, 355

4

F.Supp.2d 850 (S.D. Iowa 2005), where an intermediate carrier with no end-user

customers was held to be exempt from access charges. The basic rule remains that:

> . . . pursuant to section 69.5(b) of our rules, access charges are to be
> assessed on interexchange carriers. 47 C.F.R. § 69.5(b). To the extent
> terminating LECs seek application of access charges, these charges should
> be assessed against interexchange carriers and not against any
> intermediate LECs that may hand off the traffic to the terminating LECs,
> unless the terms of any relevant contracts or tariffs provide otherwise.[5]

**B. The VoIP/enhanced service provider exemption from tariff access charges is clear and has not been seriously disputed here.**

As we noted in our previous brief, the FCC has expressly stated that "*VoIP . . . is*

*exempt from the access charges traditional long distance carriers must pay.*"[6] The FCC

explained that it exempted VoIP because it was mindful of "Congress' directive in

section 230 'to foster and preserve the dynamic market for Internet-related services' and

'the strong federal interest in ensuring that regulation does nothing to impede the growth

of the Internet – which has flourished under our 'hands off' regulatory approach – or the

development of competition'", and noted in its footnote that "as an example of the

Commission's 'hands off' regulatory approach, it exempted enhanced service providers

(ESPs) from paying access charges to avoid imposing severe rate increases on ESPs and

to avoid disrupting the industry segment."[7]

---

[5]    Order of Apr. 21, 2004, *In the Matter of Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges*, FCC WC Docket No. 02-361, note 92 at 15, citing 47 CFR §69.5(b).

[6]    *Id.*, 19 FCC Rcd 7457, ¶9 (2004) (quoting *Developing a Unified Intercarrier Compensation Regime*, FCC Docket No. 01-92, Notice of Proposed Rulemaking, 16 FCC Rcd 9610 (2001))(emphasis added).

[7]    *Id.* at par. 14 (inner citations omitted).

5

MetTel advances its claims here as a partner of Verizon. Verizon, the owner of

MCI, which is in part a VoIP transmitter, in contrast, recently won for MCI a ruling from

the Wisconsin PUC that VoIP traffic is both "enhanced" traffic and "information" traffic

that is not subject to access charges:

> The Internet Protocol that is used to originate VoIP calls, including IP-
> PSTN traffic, is the same protocol used with other internet traffic. The
> Internet Protocol relies on the transmission of data packets to carry voice
> communications. VoIP software offers the ability to integrate features and
> capabilities not available with traditional circuit-switched telephony. IP-
> PSTN traffic terminates on the PSTN formatted in a different protocol, the
> circuit-switched time division multiplexed protocol. Thus, from the
> testimony in this proceeding, the Panel finds that there is a protocol
> conversion that is a necessary part of an IP-PSTN transmission. The IP-
> PSTN traffic that MCI proposes to carry enables an end-user to send
> information into a network, formatted using the Internet Protocol, and
> have it exit the PSTN formatted in a different protocol, the circuit-
> switched time division multiplexed protocol common to voice
> communications over the PSTN.
>
> It follows from this testimony that the IP-PSTN service is an enhanced
> service with the meaning of [47 C.F.R.] § 64.702(a) . . . [t]he IP-PSTN
> service is also an information service as defined in 47 U.S.C. § 153(20)[.]

*Petition of MCImetro Access Transmission Services,* PSC Ref. No. 54417,

Arbitration Award of May 15, 2006 at 24-25 (inner citations

omitted)("*Wisconsin*"). Moreover, the New York Public Service Commission

("NYPSC") confirms that the FCC has never held that VoIP is subject to

interstate tariffs as a telecommunications service. *See* Exhibit 8, *Complaint of*

*TVC Albany, Inc. d/b/a Tech Valley Communications Against Global NAPs, Inc.*

*for Failure to Pay Intrastate Access Charges* at 13-14.

> **C. Plaintiff has failed to raise a triable issue against our proof that the Global
> traffic it sought to tariff was "enhanced" and/or "VoIP" traffic.**

The NYPSC ruled, based on factual investigation and staff conclusions, that Global's inward-bound traffic to ILECs was "primarily or totally nomadic VoIP," and thus legally interstate under FCC and Eighth Circuit precedent and thus not subject to local tariffs. *TVC* at 14. Plaintiff suggests that its deposition of Global's declarant James Scheltema reveals factual gaps sufficient to justify going to trial on whether Global is factually entitled to the exemption which the FCC established for enhanced services, and particularly for VoIP. *See* Plaintiff's memo at 6. But, Global presented Exhibits 1, 2, 4, 5, 6, 7, 8, 9, and 11 to its Motion (9 exhibits totaling more than 120 pages) demonstrating it provides enhanced services, particularly VoIP services. MetTel argues that Exhibits 1 and 2, the declarations of Mr. Scheltema and Mr. Masuret, are not sufficient in themselves because neither has seen the physical operations of the companies that pay Global to forward traffic. But, both personally know who Global's suppliers are, and Mr. Scheltema has personal knowledge that Global enhances traffic by converting it to ATM package switching for transmission on Global's internet network.

MetTel ignores letters from Global's three primary suppliers asserting that they provide us with enhanced VoIP traffic. It also ignores the contracts under which Global's customers commit to sending only exempt VoIP traffic to Global. The evidence just described is essentially the same as that presented to telecommunications regulatory experts of the NYPSC, augmenting the letters from Transcom and Commpartners with a similar letter from PointOne.

MetTel has not disputed Global's assertion that Transcom is its largest supplier, nor offer any reason not to credit the holding of the *Transcom* judge that Transcom's traffic is sufficiently enhanced to be deserving of exemption. Further, MetTel now has

7

been supplied with forty pages of expert testimony from the *Transcom* case concerning how its VoIP traffic is enhanced in form and content. *See* Defendant's Exhibit 9.

Having received our supporting exhibits, MetTel was free to aim third party discovery at any of our customers (or even at Vonage itself), but it chose only to depose Mr. Scheltema. Nor does MetTel indicate what facts it might get from any of Global's suppliers, who are highly unlikely to testify they are not in the businesses described on their websites, discussed in their correspondence, attested to in their deposition, or even judicially determined.

MetTel also relies on *Pac-Bell v. Global NAPs*, an ALJ decision in the California PUC that is now on appeal. That case, like the Verizon case in New York, involves a signed interconnection contract between the plaintiff and Global NAPs. Although the ALJ gave some credence to a Pac-Bell (now AT&T) analysis of telephone numbers as suggesting that Global's traffic might not be pure VoIP, such speculation was not cited as the basis for the ruling. Further, the MCI *Wisconsin* ruling, *supra*, considering the identical evidence from AT&T, concluded that it provided no basis for withholding a VoIP exemption. There, the commission's arbitration panel, rejecting AT&T's evidence, wrote that:

> AT&T proposes to use the physical location of the originating and terminating end points to rate IP-PSTN traffic. Constable testimony, tr. p. 676, and AT&T proposed section 16.1. AT&T acknowledges that in some instances it will be difficult to discern the physical location of the caller from the calling party's telephone number. Nonetheless, AT&T argues that this is the correct approach under existing law and should be used despite its shortcomings. Constable testimony, tr. pp. 675-76.

*Wisconsin* at 31. The Wisconsin Commission's arbitrators, having analyzed the FCC and Eighth Circuit *Vonage* opinions, concluded:

The difficulty the FCC identifies with the [VoIP carrier] application of an end-to-end analysis that MCI is correct, and the inadequacies of the rating method AT&T has proposed are significant and would frustrate the innovative product development that the FCC has sought to encourage in its recent orders. Thus, for the reasons discussed above, the Panel concludes that the ESP exemption applies to the IP-PSTN traffic at issue in this arbitration. MCI is not responsible for paying access charges on the IP-PSTN traffic it delivers to AT&T. The use of an end-to-end analysis to rate an IP-PSTN call is unreliable, unreasonable and would frustrate a valid federal interest in promoting competitive advanced service offerings.

*See Id.* at 32. In any event, MetTel has not chosen to advance any such evidence itself, or even to explain its contention or analysis.

## D. The precedents relied on by Plaintiff are not on point.

We know of no precedent in the Second Circuit contradicting the rulings just cited. Judge Vitaliano's interim ruling in his pending case never denied there was a VoIP exemption, but merely refused to dismiss due to the possibility that Global might be found to have contracted away its right not to pay. No Second Circuit opinion we know of deals with VoIP exemption issues.

The Second Circuit cases on which MetTel relies to resist dismissal of Count I are completely inapposite because they pertain to facts not present here and to services Global no longer offers. In all, Global has over time been involved in three types of telecommunications disputes. The first dealt with a service called "dial-up internet (or 'ISP')" in which Global connected callers on the PSTN to internet providers such as AOL. The second dealt with "NXX" or "FX", which are local phone numbers used to connect dial-up internet callers to internet companies.

In recent years, however, Global's major business has been connecting the traffic of VoIP companies like Vonage, once it goes to voice aggregators like Transcom, to local loop companies like Verizon to complete an internet call to a dial-tone telephone number.

The first two internet-based formats were the subject of the earlier actions MetTel cites. The case at bar, however, concerns solely the third, more recent class of business, and thus is not bound by those earlier holdings.

The only Second Circuit Court of Appeals case in which Global has been involved, *Global NAPs, Inc. v. Verizon*, 454 F.3d 91 (2nd Cir. 2006), involved "foreign exchange" or "NXX" charges for tie-line type connections to the internet. VoIP is never mentioned in the opinion and was never involved in the case (in fact, the case has never been resolved; the opinion deals only with an early legal issue in it). The question of whether the use of special phone numbers to reach the internet should be exempt from access charges is simply not the same as the VoIP issue. The FCC, NYPSC, Wisconsin PUC, and other decisions on which our motion rests deal only with the exemption for VoIP, not with the proper rates for NXX or dial-up internet.

As our cases and exhibits show, a VoIP call begins with an end-user who receives servies(s) through their VoIP provider, such as Vonage, which provides these subscribers with a software package. The call may then continue through a company like Transcom that uses a Veraz converter, which improves the sound and increases the versatility of the digitized call. *See* Exhibit 9 pp. 75-81. It then goes to Global, which transfers the signal into ATM, so that such call can be divided into discrete data packets and sent forward over the internet through various cables or wires that have spare capacity, thus achieving speed and economy that can be passed on to the VoIP subscriber. When a VoIP call to

10

New York finally reaches Verizon, the call, (of necessity because Verizon won't allow

Global to exchange traffic in ATM or IP irrespective of technical feasibility), is converted

to standard telephonic mode, known as time division multiplexing ("TDM") so that it can

be switched to the number the VoIP customer was calling on Verizon's traditional analog

(non-packet/non-internet) network. In the Transcom litigations cited, a similar argument

was made, and was rejected on the basis of expert testimony that VoIP traffic is

substantially different from mere sprinkling of IP in the middle—and as the multitude of

processes discussed above reveal, it was rejected with good reason.

## III. Count II Should Be Dismissed Because VoIP Generally, And Global's VoIP Traffic In Particular, Are Interstate In Nature And Thus Not Subject To Intrastate Tariffs.

In *Vonage*, the FCC clearly and expressly held that VoIP traffic is jurisdictionally

interstate because some or most of it is interstate in fact, and because the portion of the

traffic that is local or intrastate is impossible to measure from a practical perspective. *See*

*In re Vonage Holdings Corp.,* 19 FCCR 22404, (2004). The FCC's reasoning and

conclusions in that regard were expressly upheld by the Eighth Circuit. *See Minnesota*

*Public Utilities Commission v. FCC,* 483 F.3d 570 (8th Cir., 2007)("*Vonage*"). The

NYPSC, following the FCC and 8th Circuit rulings, and accepting the same evidence

Global proffers here, concluded that Global is not subject to intrastate tariffs, stating:

> The Commission determines here that because the Minnesota/Vonage
> Order and Eighth Circuit Court of Appeals decision establish[] that
> nomadic VoIP service is interstate, our authority to impose intrastate
> access rates over nomadic VoIP service is precluded because *rate*
> *treatment of nomadic VoIP service falls under the exclusive jurisdiction of*
> *the FCC.*

*See TVC* at 14 (emphasis added). As noted above, MetTel has not yet discussed any of

the evidence from Global's customers or from the *Transcom* case regarding the nature of

its enhanced traffic.

## IV. Count III, Unjust Enrichment, Is Unsound As A Matter Of Law.

Global's Initial Memorandum In Support Of Summary Judgment cited *Alliance*

and other cases directly on point holding that unjust enrichment claims will not lie merely

because a CLEC failed on its tariff theory and wants to sue in district court for a lesser

amount on allegations of equity. MetTel's Memorandum In Opposition set out no reason

not to follow the precedent cited by Global. At deposition, MetTel admitted to having no

law on its side:

> Q.      All right. At the time you sued us on unjust enrichment, do you
> know of a case in which a telecommunications carrier who had tariffs was
> able to get an unjust enrichment victory?
> A.      All I know is this, from my practice in law, all I know is that unjust
> enrichment applies [sic] in the absence of any contractual arrangement.
> So usually it's pled in the alternative. So that if for whatever reason the
> contract fails or it was deemed there was never any kind of relationship,
> that you're entitled to reimbursement. There may be some cases you cited
> that concern circumstances that say unjust enrichment doesn't apply when
> there's a tariff and that makes sense because tariff is a contract, and when
> there's a contract, there's no possibility of unjust enrichment. So it's
> unjust enrichment as the alternative theory in the absence of an agreement
> or contract.

*See* Aronow Tr. at 42-43.

## V. Count IV For "Account Stated" Will Not Stand Because There Is No Debt, Or In Any Event Because The Bills Were Protested.

As we stated in our first memorandum, the flaws in counts I-III remove the basis

for an account stated cause of action. Independently of that, we cited well-established

case law that protested invoices cannot provide a basis for an account stated cause of

action. *Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 325 F.Supp.2d 204

(S.D.N.Y. 2004)(Under New York law, an account stated claim requires " 'an agreement

between the parties to an account based upon prior transactions between them....' "

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 64 (2d Cir.1999)

(quoting *Chisholm-Ryder Co. v. Sommer & Sommer,* 70 A.D.2d 429, 421 N.Y.S.2d 455,

457 (4th Dep't 1979)). "Such an agreement may be implied if 'a party receiving a

statement of account keeps it without objecting to it within a reasonable time' or 'if the

debtor makes partial payment.' " *Id.* The party who receives a statement of account must

"examine the statement and make all necessary objections . . .". *Kramer, Levin, Nessen,*

*Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 719 (S.D.N.Y.1986) (citation omitted)).

MetTel's Memorandum In Opposition to our motion contained no material supporting its

pleading of this count. At deposition, MetTel's spokesman could not provide a sufficient

means to responds to the obvious legal insufficiency of its asserted Count IV:

> Q.    Did you have any cases that say that, that say it is account stated,
> even with protest if the protest is legal rather than factual? Did you find
> any cases that defend your theory?
> A.    I don't recall. I don't know.

*See* Aronow Tr. at 44.

## VI. Count V, Threatening To Sue Global's Suppliers Of Traffic, Is Not A Count At All, And Should Be Dismissed As Frivolous Or Surplusage

MetTel, fearful that this Court will follow FCC dictates and rule in favor of

Global, which is legally an "intermediate carrier" because it has no dial tone end-user

customers, has attempted to add a hypothetical count aimed at VoIP companies who do

have dial tone end-user customers.  Such averments provide no legal or factual basis for

going to trial against Global and, tellingly, MetTel failed to assert any defense to this

count in its reply memorandum other than vague references to the equities.

## CONCLUSION

As Plaintiff and as movant, MetTel has the burden of proof or persuasion. We believe we have shown that MetTel has not and cannot satisfy these burdens. Our showings, in contrast, are not seriously challenged. For all the above reasons, Global's motion for summary judgment should be granted as to all counts.

Respectfully submitted,

Joel Davidow (JD-4500)
KILE GOEKJIAN REED & MCMANUS, PLLC
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Manhattan Telecommunications Corp.,**
**d/b/a Metropolitan Telecommunications,**
**a/k/a MetTel**
**44 Wall Street**
**6th Floor**
**New York, NY 10005**

08 - CIV-3829 (Judge Rakoff)

*Plaintiff,*

v.

**GLOBAL NAPS, INC.,**

*Defendant*

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S STATEMENT OF**
**MATERIAL FACTS**

Joel Davidow (JD-4500)
KILE GOEKJIAN REED & MCMANUS, PLLC
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806

William J. Rooney, Jr. (WR-8317)
Jeffrey C. Melick (JM-1686)
89 Access Road, Suite B
Norwood, MA 02062
(781) 551-9956

*Counsel for Defendant*

Defendant denies Plaintiff's statement of material facts numbers 3, 4, 5, and 6 as follows:

3.     Global NAPs passes telecommunications traffic to MetTel and Global
       NAPs receives compensation from others for completing such calls.
       Aronow Aff. Par 5.

Defendant denies this assertion in light of MetTel's admission that all or most of
Defendant's VoIP calls in New York or elsewhere where Plaintiff operates were
completed by Verizon rather than by Plaintiff. *See* Aronow Tr. at 12-13.

4.     Global NAPs has refused to pay compensation to MetTel when MetTel
       completes calls for Global NAPs and renders bills to same. Aronow Aff.
       Par 3. Amended Answer Par 17.

Defendant denies this assertion because there is no record of how many calls, if
any, MetTel itself has completed for Global NAPs. *See* Aronow Tr. at 12-13.

5.     The nature of the service that MetTel provides in its tariff is the same as it
       provides to Global NAPs. Aronow Aff. Par 5.

Defendant denies this assertion because the nature of the service where MetTel
completes calls itself is factually and legally different than service actually provided by
Verizon. *See* Aronow Tr. at 12-13.

6.     The amount due under the Bills from MetTel was $269,835.29 as of the
       time frame March 2008 bill dates. Aronow Aff. Par 3. A. Compl. Exhibit
       A.

Defendant denies this assertion because the amount billed was computed from a
mix of interstate and intrastate rates, but Plaintiff had no way of computing accurately

2

which calls were factually or legally intrastate as compared to interstate, and had no legal

right to impose any intrastate rates on VoIP, which is legally interstate under *In re Vonage*

*Holdings Corp.,* 19 FCCR 22404, (2004), *Minnesota Public Utilities Commission v.*

*FCC (Vonage)*, 483 F.3d 570 (8th Cir., 2007), and *TVC Albany, Inc. d/b/a Tech Valley*

*Communications Against Global NAPs, Inc. for Failure to Pay Intrastate Access*

*Charges*, Case 07-C-0059, dated March 20, 2008.

.

Respectfully submitted,

Joel Davidow (JD-4500)
KILE GOEKJIAN REED & MCMANUS,
PLLC
1200 New Hampshire Avenue NW
Suite 570
Washington, DC 20036
(202) 263-0806

# EXHIBIT 13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERIZON NEW YORK INC., VERIZON NEW ENGLAND INC., VERIZON NEW JERSEY INC., VERIZON PENNSYLVANIA INC., VERIZON MARYLAND INC., VERIZON WASHINGTON D.C., INC., and VERIZON VIRGINIA INC., <br><br> Plaintiffs, <br><br> -against- <br><br> GLOBAL NAPS, INC., GLOBAL NAPS NEW YORK, INC., GLOBAL NAPS VIRGINIA, INC., GLOBAL NAPS NEW HAMPSHIRE, INC., GLOBAL NAPS SOUTH, INC., GLOBAL NAPS NETWORKS, INC., GLOBAL NAPS REALTY, INC., CHESAPEAKE INVESTMENT SERVICES, INC., 1120 HANCOCK STREET, INC., CJ3, INC., RJ EQUIPMENT, INC., CONVERGENT NETWORKS, INC., BROADVOICE, INC., FERROUS MINER HOLDINGS, LTD., BABP (VI), LLC, 321 HEATH STREET REALTY TRUST, and FRANK T. GANGI, <br><br> Defendants. | Civil Action No. 07 CV 4459 <br><br> COMPLAINT |

1.    Plaintiffs Verizon New York Inc., Verizon New England Inc., Verizon

New Jersey Inc., Verizon Pennsylvania Inc., Verizon Maryland Inc., Verizon Washington, DC

Inc., and Verizon Virginia Inc. (collectively, "Verizon" or "Plaintiffs"), for their Complaint

against Defendants Global NAPs, Inc., Global NAPs New York, Inc., Global NAPs Virginia,

Inc., Global NAPs New Hampshire, Inc., Global NAPs South, Inc., Global NAPs Networks, Inc.,

Global NAPs Realty, Inc., (collectively "GNAPs"); Chesapeake Investments Services, Inc., 1120

Hancock Street, Inc., CJ3, Inc., RJ Equipment, Inc., Convergent Networks, Inc., BroadVoice,

Inc., Ferrous Miner Holdings, Ltd., BABP (VI), LLC (collectively, with GNAPs, the "Corporate

Defendants"); 321 Heath Street Realty Trust, and Frank T. Gangi (collectively, with 321 Heath

6.    GNAPs owes Verizon significant amounts in access charges ("Usage") for

(a) minutes of use ("MOUs") at the rates specified in Verizon's tariffs (the "Tariffs")

filed pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et. seq.*

(the "Act") with the Federal Communications Commission ("FCC") or the applicable

state regulatory agency in each of the geographic areas relevant to this action (the

"Jurisdictions") for the exchange of traffic between the two networks, and (b) Carrier

Common Line ("CCL") charges for Verizon lines that are used to connect certain types of

intrastate communications.